IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


DAVID WORLEY                                                                         PLAINTIFF

V.                                  NO.     4:05CV01774

ALLTEL CORPORATE SERVICES, INC.                                      DEFENDANT


### ORDER

Pending is Defendant's motion for summary judgment.  (Docket #20).  Plaintiff has responded and Defendant has filed a reply.  For the reasons set forth herein, Defendant's motion for summary judgment is denied.

#### Facts

Plaintiff worked for Alltel as an Operation Systems Programmer II from October 2003 until his termination on April 12, 2004.  Plaintiff had worked for Alltell previously and was rehired in October 2003 by Rick Everhart when Plaintiff was 51 years of age.  Plaintiff was 52 years of age at the time of his termination.  Plaintiff worked in the Technical Support Group (TSG), specifically in the Microsoft Support Group (MSG).  Plaintiff's supervisor was Rick Everhart.  Everhart reported to Blake Lalli.

Alltel's Little Rock computers are housed at the Data Center located on the first floor of its facility on Rodney Parham Road in Little Rock.  The MSG of which Plaintiff was a part is responsible for installation of the computer servers.  Each server is supported by a set of rails that fit into a rack that is approximately seven feet tall.  Each rack may hold several servers.  The server is attached to the rails in a way that allows it to slide in and out of the rack as necessary.  Cables are fed through channels on the back of the rack.  The server is then "powered up," the

term used for connecting the power cables from the server into the power strips and pressing a button. To rack, cable and power up a server takes about an hour. Typically, the person who racks the server is also the person who powers it up.

Only approximately twenty employees are allowed on the Data Center Operations (DCO) floor at will; all others must have approval before going on the floor, before taking any equipment there, and before racking and powering up a server. A "change control" is the approval necessary to perform activity on a specific piece of equipment on the DCO floor either physically or by remote. When accessing the DCO floor, employees must sign their names on a sign in sheet and list the change control number under which they are working. Unless otherwise approved, the window of time allowed for performing a DCO change control was between 12:01 a.m and 5:00 or 6:00a.m on Thursday or Sunday. Installation is performed at this time of day, outside normal business hours, to avoid possible interference with other servers that would cause disruption to the Alltel operation.

Plaintiff was given a change control that directed him to install a server at the allowed time after midnight. During the day, Plaintiff asked co-worker Kevin Morgan to help him with the installation during the day. Plaintiff and Morgan routinely worked as a team and Morgan agreed to help Plaintiff. Plaintiff also asked new employee, Chad Patterson, to accompany them so he could observe the process of racking a server. Plaintiff did not tell Morgan and Patterson that the installation was approved only for after midnight. Plaintiff gathered the rails and the server, placed them on a cart, and took them with the three men to the DCO floor. Plaintiff alleges that co-worker, Slim Helfrich, had asked Plaintiff that same morning to accompany him to the DCO floor and help him with a job. When, Plaintiff, Morgan and Patterson arrived at the

DCO floor, Plaintiff led and signed his name, using Hilfrich's change number and work to be performed. Patterson and Morgan followed, signed their names, and wrote ditto marks under the information that Plaintiff had written. As Plaintiff and Morgan were installing the racks, Mike Bechtel approached them. Bechtel was a member of the DCO group that controlled the data center floor and one of the few employees with free access to the floor. Plaintiff told Bechtel that he and Morgan were installing rails for a server that was to be installed that night. Bechtel told Plaintiff and Morgan that they could rack the server, but it was not to be cabled or powered up until the evening hours. Later that afternoon, Bechtel saw that the server had been powered up.

Bechtel reported to Everhart that Plaintiff, Morgan and Patterson had been on the floor and racked and powered up a server during the day. Everhart reported the incident to Lalli. Upon receiving the information, Everhart and Lalli conducted an investigation. Everhart reviewed the DCO floor sign-in sheet and saw that Plaintiff had used someone else's change request. Everhart had an electronic search conducted and saw that the server had been powered up during the time Plaintiff was on the data center floor.

Everhart and Lalli interviewed the three men. Patterson said he had tagged along to observe an installation. Morgan said he thought the change had been approved because Plaintiff told him he had a change control and asked for help. Plaintiff admitted that he was not scheduled to perform the installation until after midnight. Plaintiff admitted that he had used someone else's change order number to gain access to the DCO floor. Plaintiff admitted that he had installed rails on the rack without authority. Plaintiff denied having powered up the server at the unapproved time, and said that he had powered it up the following morning. Plaintiff told Everhart and Lalli that he would take full responsibility for what had been done. Everhart and

Lalli concluded that Plaintiff had been untruthful about the timing of the server power-up.  As a result, Patterson received a verbal warning, Morgan was placed on one year's probation and Plaintiff's employment was terminated.

Plaintiff states that he was he was initially told that he was being terminated for servicing the equipment outside of a change order time and was not told that he was being fired for the reasons now given by Defendant. Plaintiff argues that Alltel acquiesced to other employees servicing equipment outside of change order times repeatedly and he thought it was acceptable. Further, Plaintiff states that he was truthful about this incident.  Plaintiff complains that younger employees have done the same thing and received only warnings.  Plaintiff also complains that he was yelled at frequently, treated disrespectfully, called names such as "Father Smurf" and using the adjective "old".

It is undisputed that Plaintiff filed a timely charge of discrimination and received his notice of right to sue on or about September 13, 2005.  On November 18, 2005 Plaintiff filed suit alleging age discrimination.  Plaintiff's original complaint was brought pursuant to Title VII and 42 U.S.C. §1983.  However, Plaintiff was allowed to amend his complaint on March 6, 2007 correcting the scrivener's error.  Plaintiff's amended complaint alleges that he was discharged from his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623 et.seq.  Accordingly, Defendant's arguments based upon Title VII and Section 1983 are moot. The Court finds that the amended complaint relates back to the filing of the original complaint, accordingly, Plaintiff's suit is timely.  Defendant contends that summary judgment is proper at this time on Plaintiff's age discrimination claims.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

## Discussion

Plaintiff contends that he was discriminated against due to his age and terminated in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §623 et. seq.  The ADEA prohibits employers from discriminating against employees on the basis of age. 29 U.S.C. § 623(a)(1).   Under the ADEA, a plaintiff may show discrimination by either direct or indirect methods of proof.  When an employee produces direct evidence that an illegitimate criterion such as age "played a motivating part in [the] employment decision, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989), *maj. op. overruled by statute on other grounds*,  the burden-shifting standards of *Price Waterhouse* come into play.  In such cases, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account."  *Id*.  "Direct evidence includes 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (internal quotations omitted). But 'stray remarks in the workplace,' 'statements by nondecisionmakers,' and 'statements by decisionmakers unrelated to the decisional process' do not constitute direct evidence."  *Schierhoff v. GlaxoSmithkline Consumer Healthcare, L.P.* ,444 F.3d 961, 966 (8th Cir. 2006).

In the absence of direct evidence, the Plaintiff's claims are properly analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973).  To establish a prima facie claim of age discrimination,  Plaintiff must show (1) he was at least forty years old, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action, and (4) similarly-situated employees outside the class were treated more favorably."  *Thomas v. Corwin,*  2007 WL 967315, 8 (8th Cir. 2007), citing, *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir.2005).  Once an age discrimination plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 804.  If the employer meets its burden to produce such evidence, then the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*.

Under either the direct or indirect methods of proof, the Court finds that Plaintiff has established a *prima facie* case.  Plaintiff was over the age of forty, he was meeting the performance expectations of his employer and he was terminated.  Plaintiff testified that he was yelled at routinely by a supervisor and younger employees were not treated in this manner; he was called names using "old" and labeled "Papa Smurf" and  was fired for doing the same thing that others had done in the past, and the other infractions resulted in only reprimands to younger employees.  Plaintiff alleges that Lalli referred to him as "old man."  The Court cannot find at this time that these statements are stray or random remarks.  Finally, Plaintiff contends that the reason given to him for his termination was that he operated the equipment outside of the assigned time and he was never told that he was terminated for untruthfulness.

Defendant argues that even assuming Plaintiff can establish a *prima facie* case, it has

7

provided a legitimate, nondiscriminatory reason for his termination. However, in light of the evidence presented by Plaintiff, the Court finds that genuine issues of material fact remain on the issue of pretext. Accordingly, Defendant's motion for summary judgment, docket # 20, is denied.

IT IS SO ORDERED this 4th day of May, 2007.

_____
James M. Moody
United States District Judge