IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DAVID WORLEY                                                                                           PLAINTIFF

V.                                     CASE NO. 4:05CV001774

ALLTEL CORPORATE SERVICES, INC.                                                        DEFENDANT

### COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following a bench trial on January 3, 2008, the Court makes the following findings of fact and conclusions of law.

#### Findings of Fact

1. In October 2003, Plaintiff was hired to work for Alltel Corporate Services, Inc. as an Operation Systems Programmer II by Rick Everhart, the Microsoft Support Manager.

2. On the date Plaintiff was hired, Plaintiff was 51 years of age.

3. Plaintiff was hired to work in the Technical Support Group (TSG), specifically in the Microsoft Support Group (MSG). Rick Everhart was Plaintiff's supervisor.

4. Blake Lalli was Rick Everhart's supervisor.

5. Alltel's Little Rock computers are housed on the first floor of the Rodney Parham Data Center. The first floor is called the Data Center Operations ("DCO") floor.

6. The team of which Plaintiff was a part is responsible for installation of computer servers. Each Alltel computer server is supported by a set of rails that fit into a rack.

7. Typically, the person who racks the server is also the person who powers the server up. "Powered up" is the term used to describe the process of connecting the power cables connected to the server into the power strips and pressing a button.

8. Only approximately twenty employees are allowed on the DCO floor at will; all others must have approval before entering the floor, before taking any equipment onto the floor, and before racking and powering up a server on the floor.

9. It is mandatory to receive "change control" approval before performing any work on the equipment on the DCO floor. A "change control" is required whether the work will be conducted physically or remotely.

10. Once "change control" approval is given, a "change control" number will be assigned to the specific task.

11. When accessing the DCO floor, employees must sign their names on a sign in sheet and list the change control number under which they are working.

12. Unless otherwise approved, Alltel's written policy is that the window of time allowed for performing a DCO change control is between 12:01 a.m. and 5:00 or 6:00 a.m. on Thursday or Sunday. Alltel's policy was circulated to all employees cautioning them that they must abide by the policy or be subject to discipline.

13. Installation is performed during these hours to avoid possible interference with the other computer servers that would cause disruption to the Alltel operation and potential loss of revenue. All affected employees including Plaintiff were aware of the reason for the policy.

14. Plaintiff was given a change control that directed him to install a server at the permitted time after midnight.

15. On the morning prior to the early morning hours when Plaintiff was to install the server, Slim Helfrich asked Plaintiff to accompany him to the DCO floor and help with a job. Plaintiff used that opportunity when he was going to be on the floor to proceed with the

installation of the server.

16. During the day, Plaintiff asked his co-worker Kevin Morgan to help him with the installation during the day. Plaintiff and Morgan routinely worked as a team, and Morgan agreed to help plaintiff.

17. Plaintiff also invited a new employee, Chad Patterson, to accompany him on the DCO floor so that Patterson could observe the process of racking a server.

18. When Plaintiff, Morgan, and Patterson arrived at the entrance to the DCO floor, Plaintiff signed in first using his name, but used Hilfrich's change control number and work to be performed.

19. As Plaintiff and Morgan were installing the racks, Mike Bechtel, a member of the DCO group that controlled the DCO floor, approached the group. Bechtel was one of the few employees with free access to the floor.

20. Bechtel told Plaintiff and Morgan that they could rack the server, but it was not to be cabled or powered up until after midnight during the time in which the change control was approved.

21. Later that afternoon, Bechtel saw that the server had been powered up.

22. Bechtel reported to Everhart, Plaintiff's supervisor, that Plaintiff, Morgan and Patterson had been on the floor and racked, cabled, and powered up a server during the day outside of the approved time.

23. Everhart reported the incident to Lalli who with Everhart then conducted an investigation.

24. Everhart and Lalli learned that the server had been racked, the cables pulled, and

powered up outside the designated time. Everhart had an electronic search conducted and saw that the server had been powered up during the time Plaintiff was on the DCO floor in direct contravention of Bechtel's instructions.

25. Everhart and Lalli interviewed Plaintiff, Morgan and Patterson.

26. Plaintiff admitted that he was not approved to perform the installation until after midnight. Plaintiff admitted that he had used someone else's change control number to gain access to the DCO floor. Plaintiff admitted that he had installed rails on the rack without authority. Plaintiff denied having powered up the server at the unapproved time, and said that he had attempted to power it up the following morning from a remote location.

27. Plaintiff told Everhart and Lalli that he would take full responsibility for what had been done.

28. Patterson received a verbal warning for his involvement. Patterson was a recent hire, having worked at Alltel less than a month.

29. Morgan was given a written reprimand and was placed on probation for his involvement. Morgan had understood that the work had been approved.

30. On April 12, 2005, Plaintiff was told that he was being terminated. Everhart and Lalli concluded that Plaintiff had violated a written company policy and had been untruthful about the timing of the server power-up. Rick Everhart, the same person who hired Plaintiff, was also the individual who recommended his termination.

31.  At the time of his termination, Plaintiff was 52 years old and his latest employment was of 18 months duration.

32. On May 31, 2005, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission.

33. On November 18, 2005, Plaintiff filed suit in federal district court alleging that his termination was in violation of federal law.

Conclusions of Law

1. Plaintiff has failed to show discrimination by direct evidence. Plaintiff has not alleged any direct evidence of discrimination, *Beshears v. Asbill*, 930 F.2d 1348 (8th Cir. 1991)(citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)), that may be "viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. S.E. Mo. Community Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998). The only direct evidence that Plaintiff alleges is that he was addressed by Blake Lalli on occasion as "old man." To be actionable, discriminatory animus must have a causal relationship to a plaintiff's termination. *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200 (8th Cir. 1993). Plaintiff does not remember when Lalli referred to him as "old man," nor did he consider it as a derogatory remark. The comment lacks any casual connection to the termination decision and it was, at best, a stray remark with no age animus attached.

2. Alltel has articulated two legitimate, nondiscriminatory reasons for its employment decision. Courts are not permitted to second-guess an employer's personnel decision or to correct an unwise decision if the employer gives an honest, nondiscriminatory explanation for its decision. *Gill v. Reorganized Sch. Dist R-6*, 32 F.3d 376, 379 (8th Cir. 1994). First, Alltel terminated Plaintiff for violating company policy. Second, Alltel terminated plaintiff for being untruthful when he was asked about the power-up time.

3. In arriving at the conclusion that Defendant did not discriminate against Plaintiff because of his age, the Court is not finding that Plaintiff was dishonest in denying that he turned on power to the server at an unauthorized time.  It is sufficient that the decision makers here, Lalli and Everhart, had a reasonable perception that Plaintiff was not being truthful.  So, even if Plaintiff was being truthful and the decision makers were wrong in their conclusions, there is still no basis for recovery for age discrimination.

4. Plaintiff has failed to meet his burden of proof that similarly situated employees outside of the class were treated more favorably. *Thomas v. Corwin*, 483 F. 3d 516, 528 (8th Cir. 2007) "To be able to introduce evidence comparing the plaintiff to other similarly situated employees in a discrimination case, the other employees must have been 'similarly situated to the plaintiff in all relevant aspects.'" *Kight v. Auto Zone, Inc.*, 494 F.3d 727, 734 (8th Cir. 2007) *quoting Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691-92 (8th Cir. 2002). In order for Plaintiff to introduce evidence of a similarly situated incident he must show that the other employee was "in the same situation with the same decision maker within the same reasonable period of time." *Harris v. Chand, et. al.*, 506 F. 3d 1135 (8th Cir. 2007).

Plaintiff alleges that younger employees did the same thing as he did, performing work outside an authorized time, but were not fired.  Plaintiff specifically relies on an incident involving Matt Knutson.  Knutson, age 33, was involved in an incident in which he admittedly violated company policy causing an outage resulting in monetary loss for which he received a written warning.  This incident, although similar in fact and disparate in treatment, did not occur within the same period of time and occurred before the imposition of the written e-mail policy which Plaintiff violated.  The Court finds that this incident fails to prove by a preponderance of

6

the evidence that age was a motivating factor in the decision to terminate Plaintiff.

Additionally, Plaintiff alleges that he was repeatedly yelled at by his supervisor, while younger workers were not treated in the same fashion. Plaintiff has the burden to prove by a preponderance of the evidence that the younger employees were similarly situated. *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 487 (8th Cir. 1998). Plaintiff has failed to meet his burden.

IT IS SO ORDERED this 7th day of January, 2008.

_____
James M. Moody
United States District Judge